UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHRISTOPHER McCORMACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:11-CV-543 |
| | ) (Phillips) |
| LIBERTY LIFE ASSURANCE | ) |
| COMPANY OF BOSTON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff filed this action seeking review of the defendant's denial of his application for long-term disability (LTD) benefits under an employee benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). This matter is before the court for consideration of the cross-motions for summary judgment filed by the plaintiff and the defendant. Plaintiff avers that the defendant's decision to deny him LTD benefits was arbitrary, capricious, an abuse of discretion, and contrary to the law and the facts. Defendant, on the other hand, avers that its decision to deny Plaintiff's disability application was the reasonable result of a deliberate, principled reasoning process and was not arbitrary and capricious.

**I. Statement of Facts**

Liberty issued a group disability income policy to plaintiff's employer in 2006. The policy is an employee welfare benefit plan governed by ERISA. In addition to being the insurer of the insurance policy, Liberty was the administrator of the policy and determined benefit eligibility thereunder. Liberty denied plaintiff's claim for LTD benefits under the policy based on its determination, following a review of medical evidence presented by several doctors on plaintiff's behalf and two independent physicians engaged by Liberty, that plaintiff was able to perform the duties of the occupation that he was performing for his employer at the time he claimed his disability began.

McCormack submitted to Liberty a claim for LTD income benefits under the policy on November 3, 2010. On his claim application, plaintiff listed approximately eight physicians who had treated him. Their reports included the following:

Dr. Francis LeBuffe is plaintiff's treating psychiatrist. Dr. LeBuffe sent a letter to Liberty which stated:

> I have seen Mr. McCormack again today and my findings are unchanged. I believe he is totally and permanently disabled due to his psychiatric condition. I have also reviewed the record of his treatment with John Stuhl, Ph.D. and the results of psychological testing from Edward Workman, M.D. I noticed that both of these professionals agree with my opinion that Mr. McCormack is permanently disabled. He also has been involved in psychotherapy now on a weekly basis with Dr. Stuhl. I have no doubt that he is totally and permanently unable to work.

AR. 468.

Dr. Chang-Wen Chen is McCormack's primary care physician. On June 2, 2011, Dr. Chen wrote Liberty a letter stating:

> Mr. McCormack is currently a patient of ours and due to his chronic pain condition we feel that at this time Christopher should be evaluated by a disability doctor. At this time he is unable to hold down a job due to his conditions.

AR. 99.

The Administrative Record includes a May 25, 2011 letter from Dr. John H. Stuhl, treating psychologist, to Liberty that included the following:

> Mr. McCormack has been in treatment with me since March 16, 2011, and continues on a once weekly schedule. Since becoming Mr. McCormack's psychologist, I have diagnosed him with Major Depression, Recurrent Severe (296.33), Post Traumatic Stress Disorder, Severe (309.81) and Panic Disorder with Agoraphobia (300.21).
>
> The degree to which Mr. McCormack suffers from these disabilities is debilitating, and renders him incapable of either full time or part time employment. Mr. McCormack is in such a fragile psychological state that if forced to work, it is very likely he would at the least decompose and require hospitalization, and at the worse be successful in a suicide attempt. It is my professional opinion that Mr. McCormack is truly disabled and should receive disability.

AR. 98.

The evidence submitted on behalf of plaintiff also includes a Neuropsychiatric Medicine Consultation Evaluation by Dr. Edward Workman. Dr. Workman is a clinical Associate Professor of Medicine at UT Medical Center and is board certified in psychiatry, neurology and pain medicine. Dr. Workman evaluated plaintiff for two days, upon referral

from Dr. Stuhl. Dr. Workman reviewed plaintiff's medical records, imaging studies, medical history, and performed his own personal examination. Dr. Workman performed the following tests: Structured Clinical Interview for DSM-IV; Operational Psychodynamic Diagnosis; Coolidge Axis II Inventory; Personality Assessment Inventory; International Personality Disorders Exam; Symptom Questionnaire and Clinical Assessment of Depression; Omni-IV Personality Disorder Inventory; Illness Behavior Questionnaire/Whitely Index; Subtle Substance Abuse Screening Inventory; Oswestry Function Inventory; Neurobehavior Status Exam/Mental Status Exam; and 6th Ed. AMA Guides for the Evaluation of Permanent Impairment.

Dr. Workman noted that, about five years previously, plaintiff began having severe attacks of nervousness, shortness of breath, sweats and tachycardia at work. These episodes resulted in two hospitalizations and a cardiology work-up. Further, he began treatment with psychiatrist Dr. LeBuffe and psychotherapy with Dr. Stuhl. In addition to various medications for high blood pressure, back pain, and hypertension, plaintiff was taking Pristig for depression, Alprazolam for anxiety and panic, and Aznaflex for myospasm.

Dr. Workman wrote that plaintiff reported rarely driving a car, and had only driven once or twice in the past year due to extreme anxiety attacks while in traffic. Further, Dr. Workman stated that plaintiff had difficulty coping with opening mail and paying his bills. "He also could not name any activities that he enjoys." According to the evaluation, plaintiff began having social difficulties in high school. He had no real friends

and was alone most of the time. In addition, "he has always been fearful of others and he feels like he is being watched in public."

SCID screening showed that plaintiff had a long history of depressive and anxiety spectrum symptoms that worsened in his 30's. Panic attacks occur about four times a week and cause him to have chest pain, shortness of breath, tachycardia and sweats. Dr. Workman noted that these attacks are "quite disabling" and have put plaintiff out of the workforce. "He is also developing agoraphobia and he meets the DSM-IV criteria for Panic Disorder with Agoraphobia." In addition, Dr. Workman found that he meets the DSM-IV criteria for Major Depression, recurrent and severe. Continuing symptoms include sleep dysfunction, very low energy, psychomotor slowing, complete loss of interests, very poor concentration and attention, suicidal thoughts, and leaden sensitivity. According to Dr. Workman, the medical records do not show a medical condition that would account for plaintiff's symptoms.

Dr. Workman's diagnosis summary shows: Axis I, Panic disorder with Agoraphobia; Major Depression – recurrent and severe; Axis II, Mixed Borderline Personality Disorder; Axis III, low back pain, GERD, hypertension and hyperlipidemia; Axis IV, pain chronicity, lack of motivation; Axis V, GAF of 40/45 showing very serious psychiatric pathology that fully impairs the ability to work and engage in functional activities other than basic self care. Pursuant to the American Guides to the Evaluation of Permanent Impairment, 6th Ed., Dr. Workman opined that plaintiff's impairment "represents a fully and totally impaired state in terms of ability to perform useful work." Further, Dr.

Workman opined that plaintiff meets the Social Security Disability Guidelines for major depression, panic disorder, and borderline personality disorder.

Dr. Workman concluded that plaintiff is "fully disabled from any work activity, and exposing him to work stress runs the risk of further schizotype progression into a systematized psychotic state." He further found that plaintiff suffered from lumbar and migraine pain syndromes that add to his disability and impairment. Dr. Workman additionally opined that, "I can say beyond a reasonable medical psychiatric certainty that this patient is fully disabled from all work activity. It is not possible for him to function in any work setting without risking his developing a full psychotic break due to the stress thereof." AR. 86-97.

Dr. Marcus Goldman was hired by Liberty conduct a peer review of the medical evidence. Dr. Goldman is board certified in psychiatry, and he is an Associate Clinical Professor at Tufts School of Medicine. After reviewing the medical evidence, Dr. Goldman made the following findings:

> Based on review of the available data, this reviewer is unable to establish the presence of any functionally impairing or major DSM affective or anxiety disorder . . . . The claimant is suggested to have multiple somatic complaints, but there are no comprehensive assessments and no psychological testing to better ascertain the nature and extent of any possible DSM diagnosis such as a somatization disorder or a depressive or anxiety disorder. The data possibly suggests depression and/or anxiety NOS, yet due to the almost exclusively subjective nature of the record as well as the poorly comprehensive nature of the documents, this reviewer is unable to establish those diagnoses.

> It is clear that the claimant self reports panic, anxiety and depression. However, no major DSM diagnoses can be adequately established.
>
> . . .
>
> The data do not adequately support the presence of an impairing mental condition.
>
> . . .
>
> Given the totality of the data, this reviewer is unable to establish the presence of an impairing mental condition or any social, cognitive or occupational restrictions.
>
> . . .
>
> There are no objective data to support any adverse effects from the claimant's psychotropic medications.

AR. 128-33.

Liberty also hired Dr. Heidi Klingbell to conduct a review of the medical evidence. Dr. Klingbell is board certified in physical medicine and rehabilitation, and she is an Associate Clinical Professor at Columbia University Medical Center. Dr. Klingbell submitted a report to Liberty, which included the following:

> The submitted clinical records do not provide objective pathology that would establish the need for restrictions or limitations from a PM&R perspective. The records indicate the claimant has diffuse subjective complaints that are not validated by objective findings on physical examination. Serial examinations provide no evidence of motor strength loss, sensory abnormalities, or loss of relevant reflexes indicative of neurologic compromise. The claimant's imaging studies have been unrevealing and do not identify a cause for his diffuse subjective complaints. The claimant has psychological issues which are reported to be severe but not supported by any objective psychological testing. Further comment in this regard will not be made and is deferred to a mental health specialist.

7

> In total, the claimant's physical complaints/findings do not translate to functional impairment and Mr. McCormack does not have any resulting restrictions/limitations on activities including sitting, standing, walking, reading, lifting, carrying and performing repetitive and fine motor hand activities.
>
> . . .
>
> It would appear that the claimant would have no physical limitations from a PM&R perspective and therefore, Mr. McCormack can engage in work in an unrestricted fashion eight hours per day and five days per week. He may require restrictions from a psychological perspective. However, this would be outside the expertise of this reviewer.

AR. 124-27.

The record shows that Liberty initially denied plaintiff's claim for disability benefits on January 7, 2011. On June 13, 2011, McCormack sent Liberty a letter requesting a review of the January 7 denial of his claim for LTD benefits, along with a copy of the Comprehensive Mental Status Examination performed by Dr. Workman. In a letter dated June 28, 2011, Liberty again denied plaintiff's claim for disability benefits. On October 13, 2011, plaintiff brought an action against Liberty in Loudon County General Sessions Court for LTD benefits. Liberty filed a notice of removal on November 14, 2011. The parties have filed cross-motions for summary judgment on the record.

## II. Standard of Review

This court reviews *de novo* an ERISA plan administrator's denial of benefits where the administrator has no discretion to determine benefits eligibility. *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 168 (6th Cir. 2003). If an ERISA benefits

8

plan "gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan," however, the court reviews a decision to deny benefits under an "arbitrary and capricious" standard of review. *Id.* The parties agree that the plan at issue gives the plan administrator such discretionary authority. Specifically, the plan provides that:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

AR. 54.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *McDonald*, 347 F.3d at 169. Under this standard of review, the court determines whether, in light of the plan's provisions, the plan administrator's decision was rational. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* The court bases its determination upon a review of the administrative record. *Wilkins v. Baptist Healthcare Sys.,* 150 f.3d 609, 613 (6th Cir. 1998).

Although the court reviews Liberty's denial of benefits to McCormack under the highly deferential "arbitrary and capricious" standard, the court must take into consideration the fact that Liberty is acting under a potential conflict of interest because it is both the decision-maker, determining which claims are covered, and also the payor of those claims. *Marks v. Newcourt Credit Group*, 342 F.3d 444, 457 (6th Cir. 2003). Liberty's

ultimate disability determination was based upon the reports of Dr. Marcus Goldman and Dr. Heidi Klingbell, both of whom Liberty selected and paid to assess McCormack's claim. As the plan administrator, Liberty had a clear incentive to contract with individuals who were inclined to find in its favor that McCormack was not entitled to disability benefits. Therefore, there is an incentive for Liberty to deny the claim. Under such facts, "the potential for self-interested decision-making is evident." *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n. 4 (6th Cir. 2000). The possible conflict of interest inherent in this situation "should be taken into account as a factor in determining whether Liberty's decision was arbitrary and capricious." *Id.; see also Whitaker v. Hartford Life and Accident Ins. Co.*, 121 Fed.Appx. 86, 87 (6th Cir. 2005) (holding that a court is to factor an insurer's dual role into its review under the arbitrary and capricious standard, though the standard remains arbitrary and capricious).

The ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious, but whether its ultimate decision denying benefits is arbitrary and capricious. *Spangler v. Lockheed Martin Energy Sys.,* 313 F.3d 356, 362 (6th Cir. 2002). The burden of proof is on the plaintiff to show that Liberty's denial of his claim was arbitrary and capricious. *See Hunkel v. Navistar, Int'l Corp.,* 1992 WL 5435 (6th Cir. Jan. 15, 1992).

### III. Analysis

Liberty determined that McCormack was not entitled to LTD benefits because he did not satisfy the definition of disability or disabled. McCormack does not dispute Liberty's finding that his physical conditions did not render him disabled, but rather argues that his severe mental condition renders him disabled. Liberty responds that the record contains no objective data to support the conclusion that McCormack suffered from a mental disability or any functional limitations as a result of his mental condition. In its determination, Liberty relies almost exclusively on the conclusions rendered by Dr. Goldman and Dr. Klingbell after a review of McCormack's file. For the reasons stated below, the court finds that Liberty's denial of benefits was not based on a reasoned or rational reading of the record before it, and thus, was arbitrary and capricious in light of the actual record evidence.

First, Liberty's psychiatric consultant, Dr. Goldman cited a lack of evidence to support a diagnosis for a disabling mental disorder. However, plaintiff's treating physicians Dr. Stuhl, Dr. Chen and Dr. LeBuffe all opined that plaintiff could not return to work given his mental condition. Second, there is no indication in the administrative record that Dr. Goldman reviewed Dr. Workman's two-day mental evaluation report. Liberty stated that the report was considered, but it added nothing further to the evaluation of the claim. Liberty relies on Dr. Goldman's conclusion that the record contained "no comprehensive assessments and no psychological testing to ascertain the nature and extent of any possible DSM diagnosis." This conclusion simply does not square with Dr. Workman's report which details the comprehensive testing and diagnostic procedures utilized by Dr.

11

Workman. Dr. Goldman never discusses Dr. Workman's report and simply seems to ignore it.

Contrary to Liberty's argument, the highly deferential standard of review applicable to this case does not automatically mandate adherence to Liberty's decision. "Review under the arbitrary and capricious standard is extremely deferential and has been described as the least demanding form of judicial review. It is not, however, without some teeth." *McDonald*, 347 F.3d at 172. The court has an obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously in making ERISA benefits determinations. This obligation includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues. Otherwise, courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence – no matter how obscure or untrustworthy – to support a denial of a claim for ERISA benefits. *See Hackett v. Xerox corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003) ("Review under the deferential arbitrary and capricious standard is not a rubber stamp and deference need not be abject. Even under the deferential review we will not uphold a termination when there is an absence of reasoning in the record to support it.").

Based on the administrative record, and in particular, the report of Dr. Workman, the court finds that Liberty acted arbitrarily and capriciously in evaluating plaintiff's claim and that its decision denying LTD benefits to McCormack must be

overturned. This matter is remanded to the plan administrator for consideration of Dr. Workman's report and opinions.

## IV. Conclusion

Because Liberty failed to provide a full and fair review of McCormack's claim for LTD benefits, plaintiff's motion for summary judgment [Doc. 8] is **GRANTED** to the extent that this case is **REMANDED** to Liberty for consideration of Dr. Workman's report, along with the other evidence submitted in connection with plaintiff's claim, in determining whether plaintiff is entitled to LTD benefits. Defendant Liberty Life Assurance Company of Boston's motion for summary [Doc. 9] is **DENIED.**

The parties are **DIRECTED** to file a written report on the status of the administrative review on or before **January 28, 2013.**

**IT IS SO ORDERED.**

                                        **ENTER:**

                                        s/ Thomas W. Phillips
                                        United States District Judge